IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02955-KLM

KYLE D. SPROVERI,

   Plaintiff,

v.

NANCY A. BERRYHILL, in her official capacity as Acting Commissioner of Social Security,

   Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court[1] on the **Social Security Administrative Record** [#14],[2] filed March 2, 2017, in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. On May 12, 2017, Plaintiff filed an Opening Brief [#20] (the "Brief"), and Defendant filed a Response [#21] in opposition. Plaintiff did not file a reply and the time for doing so has elapsed. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court has reviewed the entire case file and the

---

[1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See* [#16, #23].

[2] "[#14]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

applicable law and is sufficiently advised in the premises. For the reasons set forth below, the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings.

## I. Background

Plaintiff alleges that he became disabled on January 1, 2012. Tr. 59.[3] On March 8, 2013, Plaintiff filed applications for disability and disability insurance benefits pursuant to Title II. Tr. 59. On May 29, 2015, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 73.

The ALJ determined that Plaintiff met the insured status requirements of the Act through September 30, 2014, and that Plaintiff had not engaged in substantial gainful activity ("SGA") from his alleged onset date of January 1, 2012, through his date last insured of September 30, 2014. Tr. 61. The ALJ found that Plaintiff suffers from four severe impairments: (1) anxiety, (2) an affective disorder, (3) a personality disorder, and (4) substance abuse addiction. Tr. 62. However, the ALJ also found that these impairments, individually or in combination, do not meet or medically equal "the severity of one of the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526)." Tr. 63. The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following limitations:

> [T]he [Plaintiff] was able to understand, remember and carry work/tasks learned in up to six months; and the [Plaintiff] is able to occasionally interact with coworkers, and supervisors, but no contact with the public.

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 14 through 14-11 by the sequential transcript numbers instead of the separate docket numbers.

Tr. 64. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff was unable to perform past relevant work, but that he was able to perform representative occupations such as night cleaner, hand packager, motel housekeeper, or overnight stocker. Tr. 71-72. She therefore found Plaintiff not disabled at step five of the sequential evaluation. Tr. 72. The ALJ's decision has become the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. § 404.981.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making

a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo.*" *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

**A.     Legal Standard**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through

four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Id.* 1052 (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142). "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142). "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

**B.    Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at

1148.  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1140 (internal quotation marks omitted).  "It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole."  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  Further, evidence is not substantial if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  Analysis

Plaintiff asserts that the ALJ erred in eight ways.  First, Plaintiff argues that the ALJ erred by disregarding treating source opinions because they were based on Plaintiff's self-reported symptoms.  *Brief* [#20] at 5-6.  Second, Plaintiff argues that the ALJ breached a duty to investigate and properly resolve conflicts of evidence in the record.  *Id.* at 6-9.  Third, Plaintiff contends that the ALJ substituted her own opinion for medical opinions with which she disagreed, and selectively picked evidence of record to support a finding of nondisability.  *Id.* at 10-12.  Fourth, Plaintiff argues that the ALJ failed to give good reasons for not affording controlling weight to treating source opinions.  *Id.* at 12-15.  Fifth, Plaintiff argues that the ALJ failed to consider Plaintiff's reasons for noncompliance with medications.  *Id.* at 15-16.  Sixth, Plaintiff contends that the ALJ should have found that his

agoraphobia was a medically determinable impairment. *Id.* at 16-17. Seventh, Plaintiff argues that the ALJ improperly discredited his subjective reports of non-exertional limitations. *Id.* at 17-18. Eighth, Plaintiff argues that the ALJ erred in finding that some of his "sporadic and non-demanding" activities of daily life contradicted Plaintiff's reports of severity. *Id.* at 18-19. The Court will address the necessary arguments in turn.

**A.     Step Two:  Agoraphobia**

First, the Court addresses Plaintiff's argument that the ALJ erred in determining that his agoraphobia was not a medically determinable impairment. *Id.* at 16-17. This is a step two inquiry.[4]  *See Wall*, 561 F.3d at 1052.

The Tenth Circuit Court of Appeals has addressed how an ALJ's purported error at step two in failing to find a specific impairment to be "severe" is harmless so long as the ALJ found at least one other impairment to be "severe" and thus proceeded to later steps of her analysis:

> An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  A claimant must make only a *de minimis* showing to advance beyond step two. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004).  To that end, a claimant need only establish, and an ALJ need only find, one severe impairment. *See Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007) (noting that, for step two, the ALJ explicitly found that the claimant "suffered from severe impairments," which "was all the ALJ was required to do"). The reason is grounded in the Commissioner's regulation describing step two, which states: "If you do not have a *severe* medically determinable physical or mental impairment . . . or a combination of impairments that is severe . . . , we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(ii) (emphasis added).  By its plain terms, the regulation requires a claimant to

---

[4] Thus, in this section of its Analysis, the Court does not address Plaintiff's argument that the ALJ failed to account for limitations stemming from the purported agoraphobia in later steps of her decision.  The Court here only addresses Plaintiff's argument to the extent made in connection with step two.

show only "*a* severe" impairment – that is, *one* severe impairment – to avoid a denial of benefits at step two. *Id.* (emphasis added). As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step. Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe. Here, the ALJ found six other impairments severe.

*Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). In the instant case, the ALJ found four other impairments to be severe: anxiety, an affective disorder, a personality disorder, and substance abuse addition. Tr. 63. Thus, the ALJ found that Plaintiff could not conclusively be denied benefits at step two and proceeded to step three of the analysis. Accordingly, to the extent Plaintiff argues that the ALJ erred at step two, such error is not reversible. *See Allman*, 813 F.3d at 1330.

**B.     Steps Three/Four: Discrediting Treating Source Opinion Based on Self-Reports**

Plaintiff argues that the ALJ erred in disregarding treating source opinions because they were based on Plaintiff's self-reported symptoms. *Brief* [#20] at 5-6. Specifically, Plaintiff refers to the ALJ's statements discrediting his various diagnoses with agoraphobia on August 28, 2012, May 2014, and November 2014 and January 2015.[5] *Id.* Plaintiff argues that this is not harmless error at step three because "it influenced the conclusion that [Plaintiff's] psychological impairments caused only mild or moderate limitations in work functioning, as opposed to the moderate and marked limitations consistently reflected in treating source opinion." *Id.* at 6. Defendant does not directly address Plaintiff's step three

---

[5] 20 C.F.R. § Pt. 404, Subpt. P, App. 1 defines "panic disorder or agoraphobia" as: "(a) Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or (b) Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces)."

argument. *Response* [#21] at 8-9 (stating merely that any *step two* error was harmless).

The ALJ decision states the following with respect to Plaintiff's agoraphobia:

> The claimant alleges agoraphobia. However, the diagnosis in May 2014 was not by an acceptable medical source and was based solely on the claimant's reported symptoms. The claimant was also diagnosed with agoraphobia in [*sic*] August 28, 2012. Dr. Smith diagnosed him with Agoraphobia in 11/201[4] and 1/2015 based solely on the claimant's self report; and in the January 2015 visit, the claimant was off his medication. The provider does not seem to be aware of the claimant's activities outside his home. The undersigned does not find the objective signs and symptoms to support this diagnosis. Although the claimant had reported difficulty leaving the house, this diagnosis was the result of a one-time examination and was not supported by other treatment notes. Notably, there is no other diagnosis for this condition. Moreover, Frederick G. Leidal, Psy.D., found no evidence of agoraphobia. Additionally, the claimant reported that he was not fearful or phobic. Further, the claimant attends a methadone clinic every morning by himself. As such, the undersigned finds that this is not a medically determinable impairment. Moreover, any limitations that would stem from this alleged impairment/symptom have already been accounted for in the residual functional capacity due to the claimant's anxiety.

Tr. 62 (internal citations omitted). The Court considers Plaintiff's argument that the ALJ erred in discrediting these diagnoses.

The Court first notes that the decision gives no reason for discrediting the August 28, 2012 agoraphobia diagnosis. Thus, that conclusion is incapable of review. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) ("In this case, the ALJ offered no explanation for the weight, if any, he gave to the [physician's] opinion . . . . We must remand because we cannot properly review the ALJ's decision without these necessary findings."). Additionally, with respect to Plaintiff's May 2014 diagnosis, the ALJ states that the diagnosis was "based solely on [Plaintiff's] reported symptoms." Tr. 62. This is not an adequate justification for disregarding evidence. "In the psychiatric/psychological context there may be no laboratory or test results that measure mental disease . . . . Observations

of medical signs by clinicians constitute medical data, and to the extent that an opinion with regard to psychological or mental impairment rests on clinically-observed signs and reported symptoms, the opinion is treated as any other medical opinion." *Williams v. Colvin*, No. 13-CV-1423-MSK, 2015 WL 4237593, at *8 (D. Colo. July 14, 2015). Stated another way, a medical provider may rely on self-reported symptoms in forming a medical opinion. The Tenth Circuit has addressed this issue in another manner:

> The ALJ rejected Dr. Schmidt's opinion, stating that it was based on plaintiff's complaints, which the ALJ found were not credible. This approach impermissibly put the ALJ in the position of judging a medical professional on how he should assess medical data – plaintiff's complaints. An ALJ may not substitute his lay opinion for a medical opinion. *See Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 744 (10th Cir.1993).

*Valdez v. Barnhart*, 62 F. App'x 838, 842 (10th Cir. 2003). Thus, the ALJ erred in disregarding the May 2014 diagnosis merely because Plaintiff was diagnosed based on his self-reported symptoms. The ALJ similarly erred in disregarding Dr. Smith's November 2014 agoraphobia diagnosis on the same grounds.

The ALJ's other reason for discrediting the May 2014 diagnosis is that it was not made by an acceptable medical source. The ALJ does not further explain this conclusion, although the Court is able to ascertain from the record that the May 2014 diagnosis was entered by Michael Misgen, a licensed professional counselor ("LPC"). Tr. 492-97. The ALJ was correct in pointing out that an LPC is not an acceptable medical source. *See Romero v. Colvin*, No. 13-cv-02744-LTB, 2015 WL 3542783, at *8 (D. Colo. June 5, 2015). However, LPCs "fall within the category of 'other sources' whose opinions may be considered to show the severity of a claimant's impairment." *Id.* (citing *Akers v. Colvin*, 556 F. App'x 754, 757 (10th Cir. 2014) (citing SSR 06–03, 2006 WL 2329939, at *2-3 (2006)).

An ALJ "generally should explain the weight given to opinions from these 'other sources,'" or otherwise ensure the decision permits the Court to follow the ALJ's reasoning. SSR 06–03, 2006 WL 2329939, at *6. Additionally, even if the ALJ were not inclined to accept the *diagnosis* of an LPC, she should have still considered the *severity of impairment* documented in the LPC's notes. The ALJ has not done so, and to entirely discredit this provider's opinion is therefore based on faulty reasoning as well. *See Thompson*, 987 F.2d at 1487.

Additionally, the ALJ refers to the opinion of Frederick G. Leidal, Psy.D., a consultative examiner for Disability Determination Services, who found no evidence of agoraphobia, and concluded that Plaintiff did not report being "fearful or phobic." Tr. 62. Dr. Leidal's conclusion—and the ALJ's reliance on it—is curious, given that earlier in the same paragraph, Dr. Leidal quoted Plaintiff as reporting, "I don't even know if anxiety is the right word, it's like impending doom, like if someone knocks on my door, I won't answer it." Tr. 468. Also, on the previous page, Dr. Leidal quoted Plaintiff, "I don't know what it is, I haven't been able to get a job in forever, and I just stay in my house, I'm afriad [*sic*] of everything, and feel like a failure and can't face anything." Tr. 467. Thus, the ALJ improperly limits her references to the aspects of the opinion that do not support an agoraphobia diagnosis. *See Valdez*, 62 F. App'x at 843 ("The ALJ is not entitled to pick and choose through a medical opinion, using only those parts that are favorable to a finding of nondisability.") (citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir.1984)).

Furthermore, the ALJ improperly substitutes her opinion for those of medical professionals when stating that the ALJ "does not find the objective signs and symptoms to support this diagnosis." *See* Tr. 62; *Williams*, 2015 WL 4237593, at *8 ("The ALJ may

not substitute his or her personal expertise or opinion for that of the medical professional, speculate as to medical or other facts, or consider the credibility of statements made by the claimant as to subjective symptoms.") (citing *McGoffin v. Barnhart*, 288 F.2d 1248, 1252 (10th Cir. 2002); *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000)). Because it is plausible that these errors may have affected the ALJ's conclusions at step three, they are grounds for remand. *See Thompson*, 987 F.2d at 1487.

Lastly, the Court finds that, contrary to the ALJ's statement in the decision, the ALJ has not accounted for "any limitations that would stem from [agoraphobia] . . . in the [RFC] due to [Plaintiff's] anxiety." Tr. 62. Simply considering Plaintiff's general symptoms of anxiety does not indicate that the ALJ also considered the evidence of specific symptoms related to agoraphobia. The RFC mentions the word "agoraphobia" in the section summarizing Plaintiff's alleged symptoms, and then merely states that Plaintiff "testified that he did not answer the door." Tr. 65. The RFC does not consider the vast majority of objective medical evidence regarding Plaintiff's alleged agoraphobia. If the ALJ had properly considered those symptoms, it may have affected the analysis at step four. Thus, because the Court cannot follow the ALJ's reasoning in connection with Plaintiff's asserted agoraphobia and related symptoms, this case must be remanded.

**C.   Plaintiff's Work History**

The Court also addresses Plaintiff's argument that the ALJ made incorrect factual findings regarding his work history. *App. Brief* [#20] at 6-9. Specifically, the finding that Plaintiff challenges is that he was able to, and did, work full-time from May to November of 2013. *See* Tr. 63. The ALJ bases this finding on two clinical notes taken by Janelle Blake, B.A., at North Denver Behavioral Health. *See* Tr. 63 (citing Tr. 507, 508). The first

note, dated May 3, 2013, summarizes Plaintiff's treatment over the previous year and states, "We will work on budgeting in sessions, and because patient is now working full time, he will need to pursue getting a GED in the evenings." Tr. 507. The second note, dated November 12, 2013, states, "Patient is finished working for the season. Next season he will have his own truck but still needs the support of the boss who reminds him of his step-father," and her assessment was that, "Patient appears to be in a major depressive episode." Tr. 508. At the hearing, Plaintiff testified that he had not worked since 2012, when he "had to cold call people for donations," and that he did not know of a job requiring a truck because he "[didn't] even have a driver's license." Tr. 86.

The ALJ's statement that Plaintiff worked full-time from May to November 2013 is not supported by substantial evidence. *See Wilson*, 602 F.3d at 1140. The note on November 12, 2013, which represented that Plaintiff had "finished working for the season," does not indicate the date on which Plaintiff stopped working, nor does it indicate that Plaintiff had been working full-time for any period of time. Tr. 508. Plaintiff's testimony at the hearing did not shed any light on the issue, as he outright denied that he had worked during that period and implied that his lack of a driver's license would be prohibitive to him driving a truck. Tr. 86.

The ALJ refers to the fact that Plaintiff worked full-time from May to November 2013 several times in steps three and four, including in finding that Plaintiff had a "mild restriction" in activities of daily living, and giving the opinions of treating medical providers Lara Mercer and Lynn Bodensteiner little weight due in part to "conflicting testimony about his activities of daily living and his work activity." Tr. 63, 67, 69, 70. The ALJ again refers to Plaintiff's work history in the conclusion of the RFC section: "[The RFC] is also consistent

-13-

with his activities of daily living which includes working full time 5/2013 to 11/2013 . . . ." Tr. 70. Additionally, the ALJ referred to these inconsistencies several times when stating that she did not find Plaintiff credible. Tr. 62, 67. 70. While it is unclear precisely how much weight was given to Plaintiff's alleged 2013 work history, it appears to have had a substantial effect on the outcome of this case, considering the number of times the ALJ refers to the inconsistencies regarding Plaintiff's work history in the decision.

Given these issues regarding the evidence underlying the ALJ's decision, the Court finds it prudent and fair to remand this matter to the Commissioner for reconsideration rather than to conduct its own analysis in the first instance which would essentially result in the prohibited reweighing of the evidence. *Thompson*, 987 F.2d at 1487. However, the Court makes no comment or opinion on the merit of any other argument submitted by Plaintiff. In addition to addressing the issues raised in this Order, the Court invites the ALJ to revise her decision in any way she deems appropriate to address issues raised by Plaintiff in this case which Plaintiff purports to have been error.

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **REVERSED** and this matter is **REMANDED** for proceedings consistent with this opinion.[6]

---

[6] The Court finds that this case does not present a proper occasion on which to exercise its discretion and direct the award of benefits. *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993). By reversing the ALJ's decision, the Court does not find or imply that Plaintiff is or should be found disabled. *See, e.g.*, *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1152 n.5 (D. Colo. 2015).

IT IS FURTHER **ORDERED** that Plaintiff is **AWARDED** his costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1). *See Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1153 (D. Colo. 2015).

Dated: March 30, 2018

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge